**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

**RAMON S. RAMSEY,**                          2006 CV 0173 ( )( )

                    **Plaintiff,**

                                              **COMPLAINT**
                                              **PLAINTIFF DEMANDS**
          **-against-**                       **A JURY TRIAL**

**THE CITY OF NEW YORK; NEW YORK CITY**
**HEALTH & HOSPITALS CORPORATION;**
**and COLER GOLDWATER SPECIALTY**
**HOSPITAL AND NURSING FACILITY**

                    **Defendants,**
-------------------------------------------------------------X

　　　　Plaintiff, RAMON  S. RAMSEY ("Ramsey" or "plaintiff"), through his attorneys

Scheurer & Hardy, P.C., complains of defendants THE CITY OF NEW YORK ("THE CITY");

THE NEW YORK CITY HEALTH & HOSPITALS CORPORATION ("HHC") and COLER

GOLDWATER SPECIALTY HOSPITAL AND NURSING FACILITY ("COLER

GOLDWATER"), as follows:

## NATURE OF ACTION

1.　　　Plaintiff brings this action to remedy discrimination on the basis of race in the terms,

conditions and privileges of employment under federal and state law.  To remedy discrimination

on the basis of race for unlawful termination of employment, to remedy discrimination in the

form of hostile work environment and to remedy discrimination in the form of retaliation for

opposing unlawful employment practices, in violation of Title VII of the Civil Rights Act of

1964 & 1991, as amended, 42 U.S.C. §2000e, *et*. *seq*., and 42 U.S.C. §1981.  State claims are

also brought pursuant to New York State Civil Practice Law and Rules Article 78 ("CPLR Art.

78").

2.      Injunctive and declaratory relief, recovery of lost wages, benefits, opportunities, compensatory and punitive damages, statutory penalties and other appropriate legal and equitable relief are sought pursuant to Title VII, 42 U.S.C. §2000e-5(f) and (g), and 42 U.S.C. §1981A.

## JURISDICTION AND VENUE

3.      Plaintiff filed charges of discrimination against the City defendants with the New York State Division of Human Rights ("SDHR") and the United States Equal Employment Opportunity Commission ("EEOC") on or about February 12, 2004 and July 7, 2004, complaining of race discrimination as continuous serial and systemic violations as alleged herein.

4.      On or about October 12, 2005, plaintiff was mailed notices of his right to sue by the EEOC.  Plaintiff commences this action within ninety (90) days of his receipt of the Right To Sue Notices.

5.      Plaintiff has fully complied with all administrative prerequisites to the exercise of jurisdiction by this Court.  Jurisdiction of the Court is invoked under 28 U.S.C. §1331; Section 705 (f)(3) of Title VII, 42 U.S.C. §2000e *et*. *seq*., and 28 U.S.C. §1367(a) for claims arising under the laws of the State of New York based upon the doctrine of supplemental jurisdiction in that such claims arise from a common nucleus of operative facts, and are so intertwined with other matters pending before the Court as to make exercise of supplemental jurisdiction appropriate.

6.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and pursuant to Title VII, 42 U.S.C. §2000e-5(f)(3) because the unlawful practices complained of herein occurred within this district and defendant resides and regularly does business within the Southern District of New York.

2

## PARTIES

7.      Plaintiff is a 45 year-old African-American male born and raised in the United States.  He resides in the County of New York, within the Southern District of New York.

8.      Upon information and belief, defendant City of New York is a municipal corporation of the State of New York and has overall authority for the appointment of the Board members of the New York City Health and Hospitals Corporation.

9.      Upon information and belief, defendant New York City Health and Hospital Corporation is a public benefit corporation created by the New York State Legislature in or about July 1, 1970.  The Corporation assumed the responsibility for operations of the City's municipal hospitals.  All HHC employees are public employees in the employment of the City of New York.  HHC is govern by a Board of Directors consisting of five city officials and ten private citizens designated by the Mayor and the New York City Council.

10.     Upon information and belief, Coler Goldwater Specialty Hospital and Nursing Facility is a member of the NYC Health & Hospitals Corporation.  It is a fully accredited long term care center and is the hospital where plaintiff was assigned and carried out his day to day duties.

## BACKGROUND FACTS

11.     Plaintiff has been an employee of HHC since February 1988 as a maintenance worker. He has been assigned to Coler Goldwater Specialty Hospital since September 1997.  Prior to coming to Coler Goldwater, plaintiff was assigned maintenance duties at Bellevue Hospital Center.

12.     Plaintiff's duties as a maintenance worker can be best described as a "Handy man."  His job assignments could include everything from basic cleaning and general maintenance work to

3

carpentry, painting, some electrical work, specialty cleaning of heating and air conditioning units, attaching name plates, fixing doors and the like.  He would often be assigned to survey areas of the Hospital to determine whether any maintenance worked or repairs needed to be performed.

13.     Throughout his tenure with HHC, plaintiff has generally received satisfactory performance evaluations and in some cases satisfactory plus evaluations.  His two most recent evaluations in 2000 and 2003 were both satisfactory.

14.     Plaintiff is also viewed by his co-workers and acknowledged by supervisors to be a very efficient worker, with excellent technical skills and knowledge.

15.     HHC, plaintiff's employer, consists of 11 acute care hospitals, Diagnostic and Treatment Centers, 4 long-term care facilities and over eighty (80) community health clinics, among other health care operations.  HHC essentially manages the public health care system for the City of New York.

16.     Coler Goldwater as alleged is a long term care center, has specialists in every field of medicine for patient care, teaching and research and was one of the first long term care facilities to have a formal long term care program for people with Acquired Immune Deficiency Syndrome (AIDS) in the United States.  Unfortunately, the supervisors that Coler Goldwater employs within its engineering departments demonstrated little tolerance for any of its workers who were of African-American decent.  More particularly, they demonstrated no racial tolerance for Ramon Ramsey and did everything within their power to rid themselves of Mr. Ramsey and thereby rid themselves of the only African-American maintenance worker in the maintenance division of the engineering departments at Coler Goldwater.

17.     On or about December 15, 2005, plaintiff received notification that he was being

4

terminated from his tenured position with HHC effective December 9, 2005.  Plaintiff's

termination was without cause, in retaliation for his insisting on equal terms and conditions of

employment, in retaliation for his having made prior complaints against his employer for racial

discrimination, and was motivated by plaintiff's race.

18.     Beginning in or about March 2003 and continuing until plaintiff's termination, defendants

engaged in a pattern of harassment and subjected plaintiff to a continuous serial and systemic

form of racial discrimination in his employment.

19.     Plaintiff has been verbally harassed.  All of his complaints have been ignored and

trivialized by his white superiors and supervisors.

20.     All of defendants' conduct was motivated by plaintiff's race and the fact that he dared to

complain about the illegal, unfair and racially hostile work environment.

21.     White employees who occupied the same work title as plaintiff or who performed the

same job as plaintiff were never harassed, disciplined or treated in the same manner as plaintiff.

22.     From the moment that plaintiff would arrive at work, until he would leave at the end of

the day, his white supervisors would harassed him, questioned him, interfere with his work

assignment in an effort to provoke plaintiff and generally threaten him throughout the work day.

Conduct that they never exhibited with other similarly situated workers.

23.     White employees would refuse certain tasks and the supervisors would make plaintiff

perform those tasks.  While employees would act in disrespectful ways to plaintiff's supervisors

and would never be disciplined.  White employees  would engage in insubordinate conduct and

would never be disciplined for such conduct, but if plaintiff complained of being treated unfairly

he would be disciplined, charged with misconduct, and then suspended without pay for weeks at

a time.

24.     Notwithstanding their refusal and insubordination, white employees were never similarly disciplined as was plaintiff, including termination of plaintiff for protesting and objecting to the dissimilar treatment.

25.     Plaintiff was told by his supervisors that he was a troublemaker and was constantly threatened with termination whenever he questioned the hostile and dissimilar treatment he was receiving.

26.     Plaintiff's supervisors actively planned and plotted ways to create and fabricate a paper record of disciplinary referrals that could be used to justify plaintiff's termination and eventually did cause his termination.

27.     Plaintiff as a result of the hostile and disparate work environment submitted a series of complaints and grievances to management about his working conditions.  The complaints and grievances were formally made and continued up to the point of his termination.

28.     Instead of properly investigating plaintiff's complaints and grievances; defendants, through their supervisors and their Labor Relations Department retaliated against plaintiff by filing disciplinary charges, suspending him on many occasions, intensifying the level of harassment and threats made against plaintiff and eventually terminated plaintiff.  All of which conduct was motivated, at least in part, by plaintiff's race.

29.     Subsequently in or about February 2004 and July 2004 plaintiff made formal complaints to the New York State Division of Human Rights and the United States Equal Employment Opportunity Commission.  Defendants responded to these complaints filed with official state and federal authorities with further harassment, disparate treatment and eventually termination,

6

thereby retaliating against plaintiff.

30.    As a direct and proximate consequence of the defendants' conduct, plaintiff has suffered

an objectively hostile work environment, disparate treatment and ultimately termination from his

employment of almost 18 years.  Plaintiff has suffered a loss of income, including salary, salary

increases and other forms of compensation or benefits of employment, emotional pain and

suffering, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

## FIRST CLAIM FOR RELIEF

### Discrimination under Title VII (Disparate Treatment)

31.    Plaintiff repeats and restates paragraphs 1 through 30 of the Complaint with the same

force and effect as if set forth herein.

32.    Plaintiff has satisfied all the procedural requirements of Title VII as a condition of filing

this action, in particular, plaintiff filed timely written charges of discrimination with the EEOC

and the New York State Division of Human Rights on two occasions.  The first SDHR/EEOC

complaint was filed on or about February 12, 2004 and the second on July 7, 2004.  Plaintiff

received a notice of right to sue and filed the complaint herein within ninety (90) days from the

receipt of the notice of right to sue on which this lawsuit is based.

33.    By the acts and practices described and alleged above, defendants have discriminated

against plaintiff in the terms and conditions of his employment on the basis of his race in

violation of Title VII, 42 U.S.C. §2000e *et*. *seq*.  Said violations represent a continuing serial and

systemic practice of discrimination.

34.    Plaintiff, as alleged, has been subjected to continuing adverse employment actions under

circumstances giving rise to an inference of prohibited discrimination.

35.     First and foremost, plaintiff was terminated from his position without cause.  Defendants'
conduct in terminating plaintiff's employment was motivated, at least in part, by plaintiff's race.

36.     Additionally, defendants are guilty of engaging in various acts of harassment, and
subjecting plaintiff to numerous adverse actions.  No other similarly situated employees were
subjected to like treatment.  Such conduct included, but is not limited to, the filing of false and
fabricated disciplinary charges against plaintiff for conduct that other non-African-American
employees were not subject to discipline or to suspensions from work without pay.  Harassing
plaintiff while plaintiff tried to complete his work assignments and imposing upon plaintiff
conditions of work that were not imposed on other similarly situated workers.

37.     Plaintiff was suspended without proper cause on more than five occasions and significant
periods of those suspensions were without pay.

38.     Plaintiff was verbally berated in front of other employees and threatened with dismissal
on numerous occasions between the period of March 2003 and December 2004.  He remained on
suspension for all of 2005 and was then terminated. All of which conduct was motivated, in part,
by plaintiff's race.

39.     As a result of these violations of Title VII in the form of disparate treatment, plaintiff is
now suffering and will continue to suffer irreparable injury and monetary damages, loss of
income, damages for mental anguish, humiliation, embarrassment, and damage to his reputation
as a result of defendants' discriminatory practices.

40.     Defendants acted intentionally, with malice and/or reckless indifference to plaintiff's
federally protected rights.  Said conduct was motivated, at least in part, by plaintiff's race and
defendants treated plaintiff differently than similarly situated non-African-American employees.

8

41.     The actions of defendants in depriving plaintiff of his constitutional and civil rights were

willful and malicious.  As a result of defendants' reckless and intentional acts, plaintiff is entitled

to economic, compensatory and punitive damages in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF

### Hostile Work Environment under Title VII

42.     Plaintiff repeats and restates paragraphs 1 through 41 of the Complaint with the same

force and effect as if set forth herein.

43.     Defendants persistent and pervasive practice of harassment, discipline imposed, including

multiple suspensions and termination, repudiation and humiliation related to plaintiff's race, as

set forth above, created a hostile workplace environment for plaintiff.

44.     Plaintiff was repeatedly harassed and such harassment was continuous, severe and

pervasive and did alter the conditions of his employment and created an abusive working

environment.

45.     The defendants' employees, who occupy managerial and supervisory positions with

defendant, carried out those acts of harassment.

46.     Defendants failed to exercise reasonable care to prevent and/or promptly correct the

continuous illegal conduct directed at plaintiff and plaintiff attempted to report the harassment

and take advantage of all of the employer's internal procedures to prevent or correct the harm

imposed upon him, including but not limited to, the filing of internal complaints with

management, complaints or grievances with his collective bargaining unit and formal complaints

with state and federal fair employment agencies.

47.     Defendants creation of a hostile work environment constitutes unlawful discrimination in

9

employment on the basis of race in violation of 42 U.S.C. §2000e *et*. *seq*.

48.     Plaintiff has suffered irreparable injury caused by defendants' illegal conduct, including interference with his civil rights, his right to file complaints about discrimination and his right to be free of employment discrimination based upon race.

49.     As a direct and proximate result of defendants' unlawful acts, plaintiff has suffered and continues to suffer loss of income, has suffered and continues to suffer distress, humiliation, great expense, embarrassment and damage to his reputation.

50.     The actions of defendants in depriving plaintiff of his constitutional and civil rights were willful and malicious.  As a result of defendants' reckless and intentional acts, plaintiff is entitled to economic, compensatory and punitive damages in an amount to be determine at trial.

### THIRD CLAIM FOR RELIEF

### Retaliation under Title VII

51.     Plaintiff repeats and restates paragraphs 1 through 50 of the Complaint with the same force and effect as if set forth herein.

52.     Defendants retaliated against plaintiff because of his opposition to their discrimination against him in the terms and conditions of his employment on the basis of his race in violation of Title VII, 42 U.S.C. §2000e *et*. *seq*.  Defendants retaliatory treatment in the terms and conditions of plaintiff's employment, including, *inter alia*, disparate disciplinary treatment (including termination), disparate assignment of duties, disparate application and enforcement of rules and regulations as a result of plaintiff's lawful complaints, violates 42 U.S.C. §2000e-3(a) which makes it unlawful for an employer to discriminate against any of it employees for opposing unlawful employment practices or filing complaints of discrimination.

10

53.     Plaintiff, at all times alleged herein, was engaged in protected activity. The defendants were aware of such activity.  The plaintiff suffered several adverse employment actions, including but not limited to, fabricated disciplinary charges, suspensions from active duty, harassment in daily work assignments by supervisors and ultimately termination. There is a causal connection between plaintiff's protected activity and defendants' adverse actions against him.

54.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, loss of income, damages for mental anguish, humiliation, distress, embarrassment and damage to his reputation as a result of defendants' discriminatory practices.

55.     Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's federally protected rights.  Defendants' conduct was motivated, at least in part, by plaintiff's race.  As a result of defendants' acts, plaintiff is entitled to economic, compensatory and punitive damages in an amount to be determined at trial.  Plaintiff is also entitled to equitable relief in the form of his reinstatement to his position.

### FOURTH CLAIM FOR RELIEF

### Discrimination under 42 U.S.C. §1981

56.     Plaintiff repeats and restates paragraphs 1 through 55 of the Complaint with the same force and effect as if set forth herein.

57.     This claim is brought under 42 U.S.C. §1981.  Section 1981 provides in pertinent part that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts...and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."

11

58.     The term "make and enforce contracts" has been defined to include the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

59.     Defendants' actions as set forth above prevented plaintiff from enjoying and enforcing his employment on the same basis as white persons, thereby denying said rights in violation of 42 U.S.C. §1981, as amended.

60.     Defendants have discriminated against plaintiff as alleged above in the terms and conditions of his employment based upon his race.  Said terms and conditions include, but are not limited to, the retaliation, the disparate treatment, the hostile work environment and the termination, among other adverse employment actions.

61.     Defendants' actions had the intention of depriving plaintiff of the rights and benefits of his employment relationship with defendants on the basis of his race.

62.     As a direct and proximate result of defendants' unlawful acts, plaintiff has suffered loss of income, loss of other employment benefits and has suffered and continues to suffer distress, humiliation, great expense, embarrassment and damage to his reputation.

63.     Plaintiff has suffered and will continue to suffer irreparable injury caused by defendants' illegal conduct including interference with his civil rights, his right to speak out against discrimination and to be free of such discrimination based upon his race.

64.     The actions of defendants in depriving plaintiff of his constitutional and civil rights were willful and malicious.  As a result of defendants' intentional acts, plaintiff is entitled to economic, compensatory and punitive damages in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

12

## Discrimination under the New York State Human Rights Law

65.     Plaintiff repeats and restates paragraph 1 through 64 of the Complaint with the same force and effect as if set forth herein.

66.     Defendants discriminated against plaintiff in the terms and conditions of his employment on the basis of his race in violation of the New York State Human Rights Law, Executive Law §291 *et*. *seq*.

67.     Executive Law §291 provides, in pertinent part, that "the opportunity to obtain employment without discrimination because of race or national origin is hereby recognized as and declared to be a civil right."

68.     Plaintiff is a member of a protected class as defined by Executive Law §291.

69.     Defendants' practice of subjecting plaintiff to discriminatory conduct in the terms and conditions of his employment, all of which were not conducted or imposed on comparable white employees in the same manner, frequency and/or degree, constitutes unlawful discrimination in violation of Human Rights Law, Executive Law §291.

70.     Defendants' practice of harassing plaintiff, imposing adverse working conditions, imposing disparate treatment and terminating plaintiff on the basis of his race has created a hostile working environment and a discriminatory termination.

71.     Defendants' discriminatory actions against plaintiff constitute unlawful discrimination in employment on the basis of race in violation of the Human Rights Law, Executive Law §291.

72.     Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages, loss of income, loss of employment benefits, mental anguish, humiliation,

distress, embarrassment and damage to his reputation as a result of defendants' discriminatory practices.

73.     Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's statutory rights.  Defendants were motivated, at least in part, by plaintiff's race.  As a result of defendants' acts, plaintiff is entitled to compensatory and economic damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### Retaliation under New York State Human Rights Law

74.     Plaintiff repeats and restates paragraphs 1 through 73 of the Complaint with the same force and effect as if set forth herein.

75.     Defendants retaliated against plaintiff because of his opposition to its discrimination against him in the terms and conditions of his employment on the basis of his race in violation of the Human Rights Law, Executive Law §296 *et*. *seq*.

76.     Executive Law §296 provides, in pertinent part, that it is an unlawful discriminatory practice for an employer "to discharge, expel or otherwise discriminate against any person because (s)he has opposed any practice forbidden under this article or because (s)he has filed a complaint, testified or assisted in any proceeding under this article."

77.     Plaintiff is a member of a protected class as defined by the Human Rights Law, Executive Law §296.

78.     Plaintiff reported and complained of such conduct and informed defendants' supervisory employees of the unlawful conditions to which he was subjected.

79.     As a result of plaintiff's complaints, defendants retaliated against plaintiff.  Plaintiff was

retaliated against by, inter alia, being harassed, treated in a racially disparate manner, subjected to

unwarranted and disparate discipline and eventually terminated.

80.     As a direct and proximate result of defendants' unlawful acts, plaintiff has suffered loss

of income, loss of opportunities, loss of other employment benefits and opportunities and then

terminated from his employment.  He has also suffered distress, humiliation, great expense,

embarrassment and damage to his reputation.

81.     As a result of defendants' conduct plaintiff is entitled to economic and compensatory

damages in an amount to be determined at trial.

### SEVENTH CLAIM FOR RELIEF

### Pursuant to New York State Civil Practice Laws and Rules Article 78

82.     Plaintiff repeats and restates paragraph 1 through 81 of the Complaint with the same force

and effect as if set forth herein.

83.     Pursuant to this Court's supplemental jurisdiction, plaintiff seeks and order and judgment

pursuant to New York State Civil Practice Laws and Rules (CPLR) Article 78 adjudging and

declaring that plaintiff has been unlawfully removed from his permanent civil service position as

a maintenance worker for the defendant New York City Health and Hospital Corporation;

adjudging and declaring that defendants' determination removing plaintiff from his permanent

civil service position was arbitrary and capricious; and was an abuse of discretion, including

abuse of discretion as to the measure and mode of penalty and disciplined imposed.

84.     Adjudging and declaring that plaintiff is entitled to be reinstated to his position and

adjudging and declaring that plaintiff is entitled to a trial on all triable issues of fact.

85.     Plaintiff should be ordered to be reinstated to his position with full back pay and interest

from on or about December 9, 2005 to the date of his reinstatement and to restore all rights,

privileges and benefits lost as a result of defendants' illegal actions in denying petitioner his civil

service position.

86.     Defendants alleged that plaintiff was insubordinate, disrespectful and used profanity

towards his supervisors.  They adopted, in or about December 9, 2005, the findings of an

administrative tribunal that recommended that plaintiff be terminated from his position with

HHC.

87.     Defendants notified plaintiff of the decision to terminate him by letter dated December 9,

2005, postmarked December 12, 2005 and received by plaintiff in or about December 15, 2005.

Plaintiff maintains that the determination to terminate him was improper and illegal.

88.     Defendants' action in terminating plaintiff was arbitrary and capricious; and was an abuse

of discretion, including an abuse of discretion as to the measure and mode of penalty and

discipline imposed.

89.     Defendant Coler Goldwater had final authority to terminate plaintiff.

90.      As previously alleged, defendants charged plaintiff with a slew of fabricated charges of

insubordination and disrespect towards his supervisors and superiors.  They imposed upon

plaintiff multiple suspensions without pay until they terminated him.  All of which were illegal.

91.     Plaintiff was charged with twenty-six separate acts of wrongful conduct.  The charges

covered the period between November 7, 2003 and December 9, 2004.  The charges included

allegations that plaintiff was insubordinate, disrespectful, abandoned his work assignments,

falsified work orders, and made inappropriate and threatening comments to his supervisors.  Of

the charges brought before the tribunal, only seven (7) of the twenty-six (26) charges were

16

sustained and those should not have been sustained.

92.   The charges which alleged substantive violations like abandoning work assignments, falsifying documents, violating hospital infection control policies and failure to obey instructions to inventory his work cart were all found to be unsubstantiated.

93.   Plaintiff maintains that the evidence before the tribunal demonstrated an abuse of power on the part of his supervisors, a manipulation of the bureaucracy by overcharging plaintiff and illegally and repeatedly suspending him without pay and generally engaged in a policy of retaliatory acts designed to create a pretext for his termination.

94.   The determination of the disciplinary tribunal in finding that plaintiff was insubordinate and disrespect and used profanity towards his supervisors was irrational, illegal, unreasonable, arbitrary and capricious and an abuse of discretion.

95.   Defendants' conduct  in adopting the tribunal's recommendation and terminating plaintiff from his permanent civil service position as a maintenance worker, is irrational, is unreasonable and illegal, is arbitrary and capricious, and is an abuse of discretion, including an abuse of discretion as to the measure and mode of the penalty and discipline imposed.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff respectfully requests that this Court enter a judgment:

a) Declaring that the acts and practices complained of herein are in violation of Title VII, 42 U.S.C. §1981; and the related provisions of the Executive Law of the State of New York;

b) Directing defendant to take such action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

17

c) Directing defendant to place plaintiff in the position he would occupy but for defendants' discriminatory treatment, and to make plaintiff whole for all earnings he would have received but for defendants' discriminatory treatment, including, but not limited to, back pay, front pay, other wages, bonuses and loss benefits;

d) Directing defendants to pay plaintiff compensatory and punitive damages;

e) Awarding plaintiff the costs of this action together with reasonable attorney's fees, as provided by 42 U.S.C. §1988 and 42 U.S.C. §2000e-6(k);

f) Awarding plaintiff reinstatement to his permanent civil service position pursuant to CPLR Article 78 and to adjudge that defendants' actions were unreasonable and illegal, irrational, were arbitrary and capricious, were an abuse of discretion, including an abuse of discretion as to the measure and mode of the penalty and discipline imposed; and

f) Awarding plaintiff such other and further relief as this Court may deem necessary and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

**Dated:  New York, New York**
**January 10, 2006**

**Respectfully submitted,**
**SCHEURER & HARDY, P.C.**
**Attorneys for Plaintiff Ramon S. Ramsey**
**1674 Broadway, 7th Floor**
**New York, New York 10019**
**Tel.  No. 212-262-0900**
**Fax  No. 212-977-7620**
**By:_____**
**Michael A. Hardy (MH4324)**

## VERIFICATION

**STATE OF NEW YORK      )**

18

)ss.

**COUNTY OF NEW YORK  )**

**RAMON S. RAMSEY,** being duly sworn, deposes and says:

1. I am the plaintiff in these proceedings.  I have read the attached complaint, and believe them to be true, except as to matters alleged to be on information and belief, and as to those matters I believe them to be true.

2. I make these statements under penalty of perjury.


_____
Ramon S. Ramsey


Sworn to before me this 10th day of
January 2006


_____
Notary Public